## MAY KIMBALL SMITH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63572.   Promulgated January 31, 1933.

*Paul Reilly, Esq.*, for the petitioner.
*H. B. Hunt, Esq.*, for the respondent.

OPINION.

MARQUETTE: The question here presented is whether the amount distributed in 1929 by the West Laurel Hill Cemetery Company constituted a dividend within the meaning of the taxing statute.

The petitioner contends that the cemetery company was a sole trustee not actively engaged in business and not in any way controlled by the certificate holders, and hence, that the distribution did not represent a dividend.

The record is clear that the company has retained its corporate form and structure throughout. Although it called in its outstanding capital stock and substituted therefor certificates of participation in the cemetery property, the certificate holders had voting powers and were eligible as managers of the corporation. Their rights essentially were those of stockholders. The company advertised its cemetery lots to the public, sold such lots, paid commissions to undertakers, conducted a greenhouse business and invested in income-producing securities, and the board of managers in its discretion made annual distributions to the certificate holders in proportion to their participating shares. In the face of these facts we are unable to accept the petitioner's theory. While the cloak was that of a voluntary trust, the substance was an active corporate business.

The petitioner further contends that the amount of distribution she received in 1929 was in payment for land contributed to the cemetery company in 1869 by her husband's grandfather. Hence, she says, he is taxable only upon the net gain derived from the sale of burial rights in 1929. By using as a basis the March 1, 1913, value of the lots sold in 1929, and deducting the operating expenses,

it can be shown that no net gain at all was derived from the sale of burial lots in 1929. The record shows, however, that when the land was contributed to the company, the latter's capital stock was issued to the grantors in exchange for the land. In our opinion the stock so issued constituted payment for the land. The transaction was no different from any other wherein a corporation exchanged its stock for property, a bargain and sale being thereby completed. As the land had already been paid for, the distribution received by petitioner from the corporation did not represent any part of the purchase price to the grantor, his successors or assigns.

Section 115 (a) and (b) of the Revenue Act of 1928 defines " dividend " as being any distribution by a corporation to its stockholders, out of its earnings and profits accumulated after February 28, 1913. For the purposes of the act " every distribution is made out of earnings or profits to the extent thereof " and from those most recently accumulated. In the present proceeding the amounts distributed represented surplus remaining after payment of necessary expenses and providing for certain contingent funds. The company's surplus for 1925 was approximately $152,000 and increased each year until in 1929 it reached $1,273,367.82. We think, therefore, that the distribution here involved falls fairly within the purview of section 115 above referred to. The fact that nominally the distribution was made among beneficiaries of a trust rather than to stockholders *eo nomine* is not controlling. As we have pointed out above, the trust form adopted can not annul the fact that for many years, including that of 1929, an active business was carried on, profits were realized, surplus accumulated and distributions made to certificate holders in proportion to their respective interests. The money received by petitioner represented earnings and profits of and to the corporation of which she was a participating member, that is, a stockholder in everything by name. In our opinion the money in question falls definitely within the scope of the statute above cited.

Petitioner raises another question, respecting her credit allowance for tax paid at the source upon certain bonds. In her return petitioner claimed a credit of $80.02. She was in fact entitled to a credit of $106.70 and the latter and larger amount was allowed by respondent in his computation. Petitioner alleges that the proposed deficiency really amounts to $327.99 although only $301.31 was asserted, the difference, $26.68, being the additional amount of credit for tax-free bonds allowed her by the respondent. Petitioner asks a refund of $26.68.

The jurisdiction of this Board is primarily with respect to deficiencies in assessment of income taxes, not their payment. The Revenue Act of 1928 gives us jurisdiction to determine the amount of over-

payment of tax for any taxable year, provided we have first found that there was no deficiency for that year. In the present instance we have found that the respondent's determination of deficiency is correct. We have no authority, therefore, to go further, and with respect to this last issue the petition must be dismissed.

*Decision will be entered for the respondent.*